IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-00617-D

**Christopher Swindell**,

               Plaintiff,

v.

**CACI NSS, Inc., f/k/a L-3 National Security Solutions, Inc. & Quick Services, LLC**,

               Defendants.

**Order**

Defendants hired Plaintiff Christopher Swindell as a video analyst to work on a Department of Defense contract. Swindell says that he almost immediately began experiencing racial discrimination and harassment at work. He claims that his coworkers used racial slurs and made racial comments in his presence, and his supervisors treated him differently because of his race. He maintains that he reported his coworkers' actions to management, but no action was taken. And then Defendants fired Swindell.

Now Swindell has sued Defendants for subjecting him to a hostile work environment, racial discrimination, retaliation, and wrongful discharge.

Defendant CACI NSS, Inc. argues that it fired Swindell because of his poor job performance. It believes that Swindell, who retired from a similar role in the Air Force due to "physical disability," had difficulty performing his job in the Air Force. It argues that his disability is relevant to his poor performance for CACI. So CACI has moved to compel production of Swindell's military physical medical records. Mot. to Compel, D.E. 50. Swindell objects because CACI's request is "overbroad, not appropriately limited in time[,] and seek[s]

irrelevant information." Mem. in Opp. at 5, D.E. 55. After reviewing the applicable case law, the court will grant the Motion to Compel because the records are relevant to CACI's defense and requested for a reasonable time frame.

The parties also seek to seal several documents which contain sensitive medical, military personnel, and military operations information. Because this information is nonpublic, confidential under the parties' Consent Protective Order, and outweighs the interest of public access, the court will grant these motions to seal and direct the Clerk of Court to permanently seal the requested documents: D.E. 51, 53, 57, 64 & 78.

## I.     Background

In March 2015, Defendant Quick Services and L-3 National Security Systems[1] hired Swindell to work as a Full Motion Video (FMV) analyst at the Joint Special Operations Command (JSOC) at Fort Bragg, North Carolina. Am. Compl. ¶8, D.E. 13. Swindell worked on a Department of Defense contract called Dagger II. Mem. in Supp. of Mot. to Compel at 1, D.E. 51. L-3 was the prime contractor and Quick Services the subcontractor on this contract. Am. Compl. ¶8. FMV analysts were responsible for "view[ing] video feed of remote locations, record[ing] data, and prepar[ing] reports to assist deployed troops." Mem. in Supp. of Mot. to Compel at 2.

Before Quick Services hired him, Swindell served in the United States Air Force as a geospatial intelligence analyst for over five years. Bartis Decl., Ex. J, D.E. 53. He mostly provided support to deployed troops by viewing video feed, a job "substantially similar" to the FMV analyst role at Quick Services. Mem. in Supp. of Mot. to Compel at 2. During his employment with the Air Force, he saw people "get blown up." *Id.*

---

[1] Defendant CACI has since acquired L-3. Mem. in Supp. for Mot. to Compel at 1, D.E. 51.

In February 2015, the Air Force discharged Swindell and placed him on the temporary disability retired list. Bartis Decl., Ex. L, D.E. 53. Defendants hired him one month later. In March 2016, the Air Force recommended Swindell for permanent retirement for reason of "physical disability based on a combination of PTSD and metabolic myopathy." Mem. in Supp. of Mot. in Compel at 2; Bartis Decl., Ex. M at 8, D.E. 53. A metabolic myopathy is a genetic disease that, because of a lack of enzymes, prevents muscles from converting fuel into energy and thus from functioning properly. John Hopkins Medicine, Metabolic Myopathy, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/metabolic-myopathy (last accessed Jan. 20, 2020).

While working with defendants, Swindell, who is African American, alleges that "from nearly his first day on the job, including during training," he experienced racially derogatory comments from supervisors and peers. Am. Compl. ¶10. He heard a classmate defend an older white woman who called blacks "coloreds." *Id.* ¶11. While with Swindell, a classmate used the phrase, "White power. No offense, Swindell." *Id.* Two of his training instructors had a conversation about why black people cannot swim. *Id.* ¶12. He overheard white coworkers make comments to another white employee that "You couldn't take a black man's banana" and "you would slip and fall in your va-jay-jay juice." *Id.* ¶14. An assistant site lead told Swindell, "Chris, when I think of EBT, I think of you." *Id.* ¶15. Swindell took EBT to mean electronic benefit transfer payments, or food stamps. *Id.* at 5 n.2. A coworker also told Swindell he could not be a politician on the TV show *House of Cards*: "No, I can see you as the black guy who owns the rib joint." *Id.* ¶25. And Swindell's immediate supervisor knew of racist slurs made towards Swindell. *Id.* ¶23.

Swindell also received criticism about his work which he feels was because of his race. One of the training instructors who had discussed why black people cannot swim "seemed bothered when Mr. Swindell turned in superior work, merely brushing it off[,]" yet "was effusive with her praise" to "inferior work product turned in by his white classmates." *Id.* ¶13. When unforeseen events during a live mission caused the team to work late, Swindell "was blamed and criticized for these events which were not within his control." *Id.* ¶19. When a similar situation happened to a white peer, she was "supported and encouraged rather than criticized." *Id.*

In May, Swindell reported in a JSOC Command Climate Survey that he was experiencing "offensive racial remarks in the workplace" and wanted them to stop. *Id.* ¶17. He provided his phone number but management did not contact him. *Id.* Swindell then reported the racist remarks and unfair treatment to his immediate supervisor, William Malave. *Id.* ¶20. Malave reported Swindell's complaint to the government project lead, Matt Craig, who met with Swindell and Malave. *Id.* ¶21. Shortly after, a team meeting took place and all contractors, government officials, and military personnel were told not to make racist comments. *Id.*

After this meeting, several coworkers approached Swindell and "pressured him" not to report any additional problems up the chain of command. *Id.* ¶24. In June, Malave told Swindell that members of his team were complaining that they could no longer speak freely at work because of his complaints. *Id.* ¶26.

In July, Swindell received "an unsatisfactory employee counseling report and performance improvement plan" which contained inaccurate information about Swindell's work. *Id.* ¶28. His new immediate supervisor, who had replaced Malave, "discouraged" Swindell from making further complaints. *Id.* Later that day, Swindell called Jason Sawyer, the Quick Services

Director of Operations, to report he was being retaliated against because of prior complaints about a racially hostile work environment. *Id.* ¶29.

About a week and a half later, Sawyer invited Swindell to attend a meeting with human resources. *Id.* ¶30. Swindell asked to push the meeting to another time so he could seek legal advice. *Id.* Six days later, Swindell was fired. *Id.* ¶31. He never received any further communication about his complaints of workplace harassment and retaliation. *Id.*

Swindell filed charges of discrimination with the Equal Employment Opportunity Commission, which concluded that Swindell was "subjected to a racially hostile work environment because of his race, Black, in violation of Title VII" and issued a dismissal and notice of rights. *Id.* ¶¶33–34.

Swindell filed a complaint in December 2017 against CACI NSS, Inc. (formerly L-3 National Security Solutions) and Quick Services, LLC. D.E. 1. He amended the complaint in January 2018. D.E. 13. He asserts four claims: hostile work environment based on race, a Title VII retaliation claim, a 42 U.S.C. § 1981 race discrimination claim, and a state law wrongful discharge claim. *Id.* at 10–14. Besides wages, benefits, and other compensation including back pay, front pay, and interest, Swindell seeks to recover the maximum compensatory and punitive damages allowed by law. *Id.* at 14.

The court denied Quick Services's motion to dismiss for failure to state a claim in April 2018. D.E. 25. Then discovery began. As part of discovery, the parties entered into a Consent Protective Order that defined protected confidential information to include "all medical, psychological, physical health, mental health, and personnel related records, all tax returns and financial information, sensitive government or military information, and all proprietary, business

or other commercially sensitive information . . ." disclosed in response to, among others, a request for production of documents. Consent Protective Order ¶1, D.E. 34.

In July 2019, CACI served its Third Request for Production of Documents. It contained the following request:

> **Request No. 21:** Produce all of your military records, including but not limited to personnel records, military human resource records, official military personnel file, enlisted performance reports (EPRs), enlisted evaluations, Airman Comprehensive Assessments, Directed by Commander evaluations, and medical records/service treatment records, accessible through submission of a completed Standard Form 180.

Bartis Decl., Ex. A, D.E. 52. At this point, Swindell maintains he had produced "more than 800 pages of medical records to defendants from multiple providers." Mem. in Opp. of Mot. to Compel at 2. Swindell then produced "an additional 256 pages of medical records." *Id.*

Swindell provided the following response to CACI's request:

> **RESPONSE:** Plaintiff objects to this request on the grounds that it is overly broad, and requests documents which are neither relevant nor calculated to lead to evidence relevant to the issues presented in this action. Plaintiff is withholding no documents based on this objection at this time. Subject to these objections, plaintiff has submitted a Standard Form 180 and will supplement this response, including any additional objections, upon receipt. Plaintiff reserves all objections to this request.

Bartis Decl., Ex. B, D.E. 52. Swindell twice supplemented his response to CACI's RFP, first "providing plaintiff's entire personnel file for his time in the USAF" and then "providing all medical records from January 1, 2013 through his discharge." Mem. in Opp. of Mot. to Compel at 2. Swindell refused to provide any military medical records prior to January 1, 2013. Mot. to Compel ¶9; Bartis Decl, Ex. D, D.E. 53.

The parties attempted in good faith to resolve this dispute. Swindell offered to "provide Plaintiff's mental health records, but not physical health records, for the period from December 2009 through December 2012 if CACI dropped its request for physical health records during that

time[.]" Mot. to Compel ¶11. CACI did not agree to this. Swindell then "agreed to produce all mental health records received in response to Standard Form 180, but not all physical health records." *Id.* ¶12.

After a failed meet and confer process, CACI moved to compel. Both parties filed supporting and opposing memoranda, respectively. D.E. 51 & 55. Counsel for both parties also filed a corresponding declaration and exhibits detailing their communications and discovery efforts. D.E. 52, 53, 56 & 57.

CACI moved to seal its Memorandum in Support, D.E. 51, and Exhibits D, E, J, L, M, and N filed with its declaration, D.E. 53. Def. Mot. to Seal (Sept. 26, 2019) at 1, D.E. 54. It did so because the memorandum "contains facts, and related legal analysis concerning Plaintiff's medical history and certain medical records" and the declaration exhibits "consist of certain medical records and military records containing medical information" which the Consent Protective Order makes confidential. *Id.* ¶2–3.

Swindell moved to seal Exhibit A, D.E. 57, of its declaration. Pl. Mot. to Seal (Oct. 10, 2019) at 1, D.E. 58. Exhibit A "consists of social security numbers, Department of Defense Identification Numbers, and documents subject to the Privacy Act of 1974," all considered confidential under the Consent Protective Order. *Id.* ¶2.

Since CACI moved to compel, CACI and Quick Services have moved separately for summary judgment. D.E. 61 & 68. The court has not ruled on these motions. As part of its motions, each party filed a Statement of Material Facts. D.E. 63 & 70. In response to the summary judgment motions, Swindell also filed a Statement of Material Facts. D.E. 77.

CACI moved to seal Exhibits 10 and 49, D.E. 64, of its Statement of Material Facts. Def. Mot. to Seal (Oct. 18, 2019), D.E. 65. CACI alleges the exhibits "contain information related to

the operations of the United States Special Operations Command ("SOCOM") conducted at the Joint Special Operations Command located on the Fort Bragg military base" and are confidential under the Consent Protective Order. *Id.* ¶2–3.

Swindell gave notice to file under seal Exhibits 6, 8, and 28, and Attachment B to the Declaration of William Malave, D.E. 78, filed in support of his Statement of Material Facts, because CACI had designated all documents "Confidential." D.E. 79. CACI then, in compliance with Local Civil Rule 79.2 and Section V.G.1(e) of the Administrative Policies and Procedure Manual, filed a consent motion to seal the documents. Def. Mot. to Seal (Dec. 11, 2019) at 1, D.E. 82. It stated that the Statement of Facts exhibits "contain confidential personnel information with respect to individuals who are not parties to this case and information related to the operations of the United States Special Operations Command ("SOCOM") conducted at the Joint Special Operations Command located on the Fort Bragg military base." *Id.* ¶2. And Exhibit 6 and Attachment B, which are the same document, "contain[] personnel information related to multiple individuals who are not parties to this action" and "information related to the operations of SOCOM and the contract pursuant to which those operations were performed." *Id.* ¶3.

## II.    Discussion

CACI believes it is entitled to production of Swindell's physical military health records because Swindell's military training and work was similar to the work he did for Defendants and "based on [his] testimony concerning medical diagnoses he received while in the military, [Swindell's] military medical records may contain highly relevant information concerning both potential causes of his alleged emotional distress as well as his ability to perform the duties of his job for Defendants[.]" Mot. to Compel ¶8. CACI seeks production of military medical records for a period of about five years, from 2009 to 2013.

Swindell, citing *Benjamin* v. *Sparks*, No. 4:14-CV-186-D, 2017 WL 1497930, at *3 (E.D.N.C. Apr. 26, 2017), alleges there is a bright-line rule of a two-year period predating an injury for disclosure of medical records. This, he maintains, is why he produced physical health records from January 1, 2013, but refuses to produce all records beginning in 2009.

As to the motions to seal, the court must find the circumstances of the case meet the factors outlined in *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir. 1984), and find the need to seal the documents overcomes the right of public access. All involved parties consent to the motions to seal.

### A.      Motion to Compel

The Federal Rules allow parties to "obtain discovery regarding any unprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Considerations of proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* But the court retains the authority to limit the "frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Federal Rule of Civil Procedure 37 governs motions to compel. The rule requires moving parties to include a certification that they "in good faith conferred or attempted to confer with the . . . party failing to make disclosure or discovery." Fed. R. Civ. P. 37(a)(1). This district's local rules similarly require counsel "certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions." Local Civ. R. 7.1(c)(2), E.D.N.C.

A party may move to compel discovery when another party fails to produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

Swindell argues that CACI's request for all his military physical health records is overbroad and irrelevant. Swindell has already produced all medical records, including physical and mental health records, from January 1, 2013 to the present in compliance with the two-year rule he perceives the court set out in *Benjamin* v. *Sparks*. 2017 WL 1497930, at *3 (establishing "that a two-year time period pre-dating the alleged injury date fairly balances the Defendants' need for discovery and Plaintiff's interest in avoiding burdensome discovery."). Swindell also argues that "not a *single* record in the USAF performance records already produced by the plaintiff[] indicates a physical injury impacted his performance as a geospatial intelligence analyst," and neither will any other physical health records produced. Mem. in Opp. of Mot. to Compel at 5. If deemed necessary by the court, Swindell offers *in camera* review of the remaining physical health records. *Id.* at 8 n.2.

CACI argues Swindell's physical health records are relevant because they "may contain information directly relevant to his claim for emotional distress" and "information bearing on his ability, or inability, to perform the duties of his job on the Dagger II contract." Mem. in Supp. of Mot. to Compel at 6. CACI contends that "[i]f, as a result of physical or mental health impairments, Plaintiff had difficulty performing his job as a geospatial analyst for the Air Force, it is likely that he had difficulties in his role as an intelligence analyst on the Dagger II

contract[.]" *Id.*[2] CACI also asserts that there is no undue burden to Swindell disclosing the records because the military has already released them to Swindell and they are currently in his possession. *Id.* at 7.

Because Swindell permanently retired from the Air Force because of a "physical disability," information about his physical condition is directly relevant to whether he was able to satisfactorily perform his job for Quick Services and L-3. And Swindell seeks compensatory and punitive damages, including for emotional distress resulting from his employment.[3] Such claims entitle defendants to review of both physical and mental health records. *See Equal Emp't Opportunity Comm'n* v. *Sheffield Fin., LLC*. No. 1:06-CV-00889, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007) (citing cases) (internal quotations omitted) ("When a plaintiff seeks damages for mental anguish, the medical and psychological information sought by interrogatories and requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages."); *Benjamin* v. *Sparks*, 2017 WL 1497930 at *3 (when a plaintiff alleges emotional distress, his "medical history—both physical and mental—is squarely at issue").

The court must decide how much of Swindell's physical health record is discoverable under Fed. R. Civ. P. 26.

Swindell urges the court to adopt the reasoning in *Benjamin* v. *Sparks*, 2017 WL 1497930. In that case, the plaintiff sued his former employers alleging, among other things,

---

[2] CACI's defense to Swindell's claims is that Swindell did not adequately perform his duties. Mem. in Supp. of Mot. to Compel at 7.

[3] Neither Swindell's original nor amended complaints include a claim for negligent or intentional infliction of emotional distress. The court assumes without deciding that Swindell seeks damages for emotional distress because Swindell does not dispute CACI's assertion that he is claiming emotional distress, Mem. in Opp. of Mot. to Compel at 4–5; seeks a broad prayer for relief, Am. Compl. at 14; and highlights feelings of distress in his Statement of Additional Material Facts, D.E. 77 ¶¶54 (Swindell "felt uncomfortable"), 55 (Swindell experienced "stress and discomfort"), & 92 (Swindell took time off work "due to serious issues that ma[d]e [him] feel extremely uncomfortable in [his] work environment").

discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VII, and the Americans with Disabilities Act, and alleged emotional distress resulting from defendants' actions. *Id.* at *1. The plaintiff objected to an interrogatory seeking information and documents about his physical and mental health treatment for a period of over seven years as irrelevant and unduly burdensome. *Id.* at *2. The court found the plaintiff's physical and mental health history relevant to his alleged emotional distress and disability discrimination claim. *Id.* But the court agreed with the plaintiff that the requested time frame was too broad. *Id.* at *3. It noted that "courts do not typically order disclosure of medical information pre-dating the alleged injury date by as much time as Defendants seek here"—over seven years. *Id.* And in a request for production of documents in the same case, defendants had requested medical records pre-dating the alleged injury date by only two and a half years. *Id.* The court thus found that "a two-year time period pre-dating the alleged injury date fairly balances the Defendants' need for discovery and Plaintiff's interest in avoiding a burdensome discovery." *Id.*

CACI directs the court to *Equal Employment Opportunity Commission* v. *Sheffield Financial, LLC*, 2007 WL 1726560. In that case, the plaintiff alleged termination discrimination based on his national origin and Arabic accent. *Id.* at *1. The defendant sought EEOC medical records about the plaintiff's physical health "from January 1, 2000, to the present." *Id.* The plaintiff's alleged injury occurred on September 15, 2005. Compl. at ¶7, 2006 WL 3591843 (M.D.N.C.) (Trial Pleading). Despite argument from the EEOC that the medical records were not discoverable because the plaintiff had alleged a "garden-variety" compensatory damage claim, the court found the defendant's request relevant. *Id.* at *4–5. And because the parties had entered a Consent Protective Order covering all documents produced in discovery, the court found the plaintiff's privacy adequately protected. *Id.* at *6. Thus, the court authorized the production of

medical records and identification of healthcare providers for over five years—five years and nine months—predating the alleged injury date. *Id.* at *8.

The *Sparks* court cited *Sheffield Financial* as the longest period for production of medical records authorized by a court—five years—of cases reviewed in its decision. *Sparks*, 2017 WL 1497930 at *3.

Swindell admits that CACI is entitled to some medical information but maintains that he has already produced enough records to satisfy CACI's request and argues that any more production would permit CACI "unfettered access to rummage through plaintiff's history of medical treatment." Mem. in Opp. of Mot. to Compel at 5, 9. CACI seeks information relevant to its defense. It believes that "physical health records from 2009 through 2012 may reflect causes of Plaintiff's mental health issues then and contributing factors to his alleged emotional distress now." Mem. in Supp. of Mot. to Compel at 7. CACI does not know what it does not know, and its position that it needs to review all Swindell's military medical records is not unreasonable. It is conceivable that the remaining records contain information not included in the records already produced.

There is no allegation that Quick Services fired Swindell because of a physical disability. But a physical disability led to Swindell's discharge from the Air Force, where he performed essentially the same job, and CACI maintains that it could have contributed to Swindell's allegedly poor job performance with Quick Services. Requiring Swindell to produce his remaining medical documents will not be unduly burdensome, since he already has them in his possession. And the presence of the protective order protects the important privacy concerns raised by disclosing private medical records, so long as Swindell asserts the documents are confidential. *See In re Grand Jury Subpoena John Doe No. A01–209*, 197 F. Supp. 2d 512, 514

(E.D. Va. 2002) (noting federal courts have recognized that patients have an interest in the privacy of their medical records, but this interest is not an absolute right).

CACI has already obtained physical medical records for the two years and two months predating the start of Swindell's employment with Quick Services.[4] And it now seeks another three years and one month of medical records.[5] The *Sheffield Financial* court authorized production of five years and nine months of medical records predating the alleged injury. CACI seeks medical records for all of Swindell's employment with the Air Force, which began in December 2009 and ended in February 2015—a total of five years and three months. The *Sparks* court declined to require production of a period totaling seven years. *Sparks*, 2017 WL 1497930 at *3.

While the Fourth Circuit does not appear to have opined on the issue, district courts have authorized production of medical documents for varied time periods. *Compare Wilkins* v. *Vaughn*, No. 5:13-CT-3272-D, 2015 WL 10913526, at *2 (E.D.N.C. Apr. 17, 2015) (finding "Plaintiff's request for medical records more than four years prior to the events at issue in this case to be overly broad and beyond the scope of Rule 26" and holding two years' worth of records to be adequate), and *Equal Emp't Opportunity Comm'n* v. *Smith Bros. Truck Garage, Inc.*, No. 7:09-CV-00150-H, 2011 WL 102724, at *3 (E.D.N.C. Jan. 11, 2011) (limiting the date of production of medical records to two years before the incident), *with Pressley* v. *Caromount Health, Inc.*, No. 3:09-CV-460-FDW-DSC, 2010 WL 780053, at *3 (W.D.N.C. May 11, 2010) (granting motion to compel production of ten years of plaintiff's medical records where plaintiff "placed her emotional and mental state at issue"), *Equal Emp't Opportunity Comm'n* v.

---

[4] Swindell produced physical and mental health records from January 1, 2013 through his discharge. Mem. in Opp. of Mot. to Compel at 2.
[5] CACI asks the court to require production of Swindell's physical health records from the beginning of his military employment in December 2009.

*Dolgencorp, LLC*, No. 1:09-CV-700, 2011 WL 1260241, at *2–3, *15 (M.D.N.C. Mar. 31, 2011) (granting motion to compel production of seven years' worth of plaintiff's medical records), and *Marshall* v. *Univ. of Maryland Med. Ctr.*, No. TDC-17–2779, 2018 WL 3727947, at *4 (D. Md. Aug. 6, 2018) (finding a request for all medical records from the date of plaintiff's eighteenth birthday "overbroad and unduly burdensome" but requiring plaintiff to produce medical records for the five years prior to the date of the alleged injury).

There is no bright line rule limiting the production of medical records to two years. As evidenced above, courts in the Fourth Circuit have granted requests for production for periods of up to ten years. Five years and three months of Swindell's medical records is not beyond the scope of Rule 26. Thus, the court will grant CACI's Motion to Compel. Swindell's concern that producing the records may cause him "embarrassment," Mem. in Opp. to Mot. to Compel at 8, is remedied by the parties' protective order. *See, e.g.*, *Ballock* v. *Costlow*, No. 1:17-CV-52, 2017 WL 9620421, at *22 (N.D.W. Va. Dec. 6, 2017) (where a joint protective order "preventing the dissemination of sensitive, confidential information" was in place and information was "directly relevant to a disputed fact or issue, the fact that it may also be embarrassing" was "of little consequence" at the pretrial stage).

CACI also asks the court to require Swindell to pay its reasonable expenses incurred by its Motion to Compel, including attorney's fees, under Fed. R. Civ. P. 37(a)(5). Mem. in Supp. of Mot. to Compel at 8. Citing the same rule, Swindell asks the court to require CACI to pay his reasonable expenses incurred in responding to CACI's motion, including attorney's fees. Mem. in Opp. of Mot. to Compel at 9.

Fed. R. Civ. P. 37 provides that if a court grants a motion compelling discovery, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct

necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust[,]" the court must not order this payment. Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii).

"A legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc.* v. *Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce* v. *Underwood*, 487 U.S. 552, 565–66 n.2 (1988)). Because case law within the Fourth Circuit about the period of required disclosure of medical records varies from case to case and in fact lacks a bright-line rule, a genuine dispute existed over the governing rule. Thus, the court finds that Swindell's objection was "substantially justified" and orders each party to pay its own costs relating to CACI's Motion to Compel.

### B.        Motions to Seal

Before granting a party's motion to seal, the court "must comply with certain substantive and procedural requirements." *Va. Dep't of State Police* v. *Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Procedurally, the district court must (1) give the public notice and a reasonable chance to challenge the request to seal; (2) "consider less drastic alternatives to sealing"; and (3) if it decides to seal, make specific findings and state the reasons for its decision to seal over the alternatives. *Id.*

And "[a]s to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Id.* A court may seal documents "if the public's right of access is

outweighed by competing interests." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The factors the court considers in making this determination include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Id.* The court must find that the circumstances of a motion overcome both the First Amendment and common law presumption of access.

### 1.     D.E. 54.

CACI requests that the court place its Memorandum of Support, D.E. 51, and Exhibits D, E, J, L, M, and N filed with its Declaration of Patricia T. Bartis, D.E. 53, under seal. Def. Mot. to Seal (Sept. 26, 2019) at 1, D.E. 54. It asserts the memorandum "contains facts, and related legal analysis concerning Plaintiff's medical history and certain medical records" and the identified declaration exhibits "consist of certain medical records and military records containing medical information" designated as confidential under the Consent Protective Order and "correspondence and deposition testimony that reference Plaintiff's medical history." *Id.* ¶2–3. CACI moved to seal in late September 2019. The motion to seal has been present on the public docket since that time and no member of the public has opposed the motion. Swindell consents to the motion to seal. *Id.* ¶5.

After considering the motion to seal and all related filings, the court finds that it should grant the motion to seal because all the factors set out in *In re Knight Publishing Co.* are satisfied. CACI has shown that the documents subject to the motion to seal contain or refer to nonpublic personal medical information, including reasons for Swindell's military disability status, considered confidential under the Consent Protective Order and for which the public has

no proper purpose to seek. Based on this showing, the court finds that the circumstances presented by this motion overcome both the First Amendment and common law presumption of access. Additionally, although the public has had notice of the request to seal and a reasonable opportunity to oppose the motion, no objections have been filed. Finally, the court has considered less dramatic alternatives to sealing and finds that they would be inadequate to preserve the confidentiality of the sensitive medical information in the documents.

Thus, CACI's motion to seal (D.E. 54) is granted and the court orders that the Clerk of Court must permanently seal CACI's Memorandum of Support (D.E. 51) and Bartis Declaration Exhibits D, E, J, L, M, and N (D.E. 53).

### 2.  D.E. 58.

Swindell requests that the court place Exhibit A of its Declaration of Benjamin P. Winikoff, D.E. 57, under seal because it "consists of social security numbers, Department of Defense Identification Numbers, and documents subject to the Privacy Act of 1974," all designated confidential under the Consent Protective Order. Pl. Mot. to Seal (Oct. 10, 2019) at 1, ¶2, D.E. 58.[6] Swindell moved to seal in October 2019. The motion to seal has been present on the public docket since that time and no member of the public has opposed the motion. At first CACI did not consent to the motion to seal "because it [did] not believe that the Privacy Act of 1974 requires that the document be filed under seal." *Id.* ¶6. But CACI reconsidered and now does not oppose the motion to seal. Resp. to Pl. Mot. to Seal (Oct. 15, 2019), D.E. 59.

After considering the motion to seal and all related filings, the court finds that it should grant the motion to seal because all the factors set out in *In re Knight Publishing Co.* are

---

[6] Under the Privacy Act of 1974, "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . . .[,]" subject to twelve exceptions. 5 U.S.C. § 552a(b).

satisfied. Swindell has shown that the document subject to the motion to seal includes identifying information of persons other than himself and contains or refers to nonpublic military personnel-related information also considered confidential under the Consent Protective Order. Based on this showing, the court finds that the circumstances presented by this motion overcome both the First Amendment and common law presumption of access. Additionally, although the public has had notice of the request to seal and a reasonable opportunity to oppose the motion, no objections have been filed. Finally, the court has considered less dramatic alternatives to sealing and finds that they would be inadequate to protect the sensitive military personnel information in the documents.

Thus, Swindell's motion to seal is granted and the court orders that the Clerk of Court must permanently seal Exhibit A of the Winikoff Declaration (D.E. 57).

### 3. D.E. 65.

CACI requests that the court permanently place Exhibits 10 and 49 of its Statement of Material Facts, filed in support of its Motion for Summary Judgment, under seal. Def. Mot. to Seal (Oct. 18, 2019), D.E. 65. It makes this request because the exhibits "contain information related to the operations of the United States Special Operations Command ("SOCOM") conducted at the Joint Special Operations Command located on the Fort Bragg military base" and are confidential under the Consent Protective Order. *Id.* ¶2–4. Exhibit 10 "contains information extracted from a classified government system." *Id.* ¶3. And Exhibit 49 is a deposition exhibit produced by the United States Special Operations Command subject to the protective order. *Id.* ¶4. CACI moved to seal in October 2019. The motion to seal has been present on the public docket since that time and no member of the public has opposed the motion. Swindell consents to the motion to seal. *Id.* ¶5.

After considering the motion to seal and all related filings, the court finds that it should grant the motion to seal because all the factors set out in *In re Knight Publishing Co.* are satisfied. CACI has shown that the documents subject to the motion to seal refer to or contain sensitive, nonpublic military operations information considered confidential under the Consent Protective Order. Based on this showing, the court finds that the circumstances presented by this motion overcome both the First Amendment and common law presumption of access. Additionally, although the public has had notice of the request to seal and a reasonable opportunity to oppose the motion, no objections have been filed. Finally, the court has considered less dramatic alternatives to sealing and finds that they would be inadequate to protect the sensitive, nonpublic military information in the documents.

Thus, CACI's motion to seal is granted and the court orders that the Clerk of Court must permanently seal Exhibits 10 and 49 of CACI's Statement of Material Facts (D.E. 65).

## 4. D.E. 82.

CACI requests that the court permanently place Exhibits 6, 8, and 28, and Attachment B to the Declaration of William Malave, filed in support of Swindell's Statement of Material Facts, under seal. Def. Mot. to Seal (Dec. 11, 2019) at 1, D.E. 82. Exhibit 8 is a deposition exhibit produced by the United States Special Operations Command subject to the Consent Protective Order. *Id.* ¶4. Exhibit 28 is excerpts of a contract between L-3 and the U.S. Government about providing classified services. *Id.* ¶5. CACI asserts these exhibits "contain confidential personnel information with respect to individuals who are not parties to this case and information related to the operations of the United States Special Operations Command ("SOCOM") conducted at the Joint Special Operations Command located on the Fort Bragg military base." *Id.* ¶2. Exhibit 6 and Attachment B are the same document, which CACI asserts "contains personnel information

related to multiple individuals who are not parties to this action" as well as "information related to the operations of SOCOM and the contract pursuant to which those operations were performed." *Id.* ¶3. This exhibit is confidential under the Consent Protective Order. *Id.*

CACI moved to seal in mid-December 2019. The motion to seal has been present on the public docket since that time and no member of the public has opposed the motion. Swindell and Quick Services consent to the motion to seal. *Id.* ¶6.

After considering the motion to seal and all related filings, the court finds that it should grant the motion to seal because all the factors set out in *In re Knight Publishing Co.* are satisfied. CACI has shown that the documents subject to the motion to seal contain or refer to information about military operations and a military contract regarding classified services, as well as personnel-related information of persons other than the plaintiff. Based on this showing, the court finds that the circumstances presented by this motion overcome both the First Amendment and common law presumption of access. Additionally, although the public has had notice of the request to seal and a reasonable opportunity to oppose the motion, no objections have been filed. Finally, the court has considered less dramatic alternatives to sealing and finds that they would be inadequate to preserve the confidentiality of the sensitive military operations and personnel information in the documents.

Thus, CACI's motion to seal is granted and the court orders that the Clerk of Court must permanently seal Exhibits 6, 8, and 28 and Attachment B to the Declaration of William Malave (D.E. 82), all filed in support of Swindell's Statement of Material Facts.

### III.    Conclusion

In sum, the court grants CACI's Motion to Compel (D.E. 50) and all Motions to Seal before the court (D.E. 54, 58, 65, 82). The Court directs the Clerk of Court to permanently seal

D.E. 51, 53, 57, 64 & 78. Swindell must produce all his physical military medical records from December 1, 2009 until January 1, 2013 within 14 days from the date of this order or, if the records are not in his possession, 14 days from the date he receives them.

Dated: February 10, 2020

_Robert T. Numbers II_

Robert T. Numbers, II
United States Magistrate Judge